UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Kenneth H.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

23-CV-6358-LJV
DECISION & ORDER

---

On June 26, 2023, the plaintiff, Kenneth H. ("Kenneth"), brought this action under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled.[2] Id. On September 25, 2023, Kenneth moved for judgment on the pleadings, Docket Item 7-1; on September 30, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 8-1; and on October 16, 2023, Kenneth replied, Docket Item 9.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Kenneth applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. See 42 U.S.C. § 423(c); Arnone v. Bowen, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. See 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

For the reasons that follow, this Court grants Kenneth's motion in part and denies the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); *see McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

I.     **THE ALJ'S DECISION**

On March 1, 2023, the ALJ found that Kenneth had not been under a disability since filing his protective application for SSI and DIB on October 1, 2021. *See* Docket Item 5 at 35. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a), and 416.920(a). *See id.*

At step one, the ALJ found that Kenneth had not engaged in substantial gainful activity since his alleged onset date of October 1, 2021. *Id.* at 25. At step two, the ALJ found that Kenneth suffered from several severe, medically determinable impairments: "lumbar spine disorder; migraine headaches; osteoarthritis of the bilateral knees; depressive disorder; and anxiety/trauma related disorder." *Id.*

At step three, the ALJ found that Kenneth's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 26-28. More specifically, the ALJ found that Kenneth's physical impairments did not meet or medically equal listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root)*,* 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equine), or 1.18 (abnormality of a

3

major joint in any extremity).  *Id.* at 26-27.  Likewise, the ALJ found that Kenneth's mental impairments did not meet or medically equal listing 12.04 or 12.06 (depressive, bipolar, or related disorders)*.  Id.* at 27.  In assessing Kenneth's mental impairments, the ALJ found that Kenneth was (1) mildly impaired in understanding, remembering, or applying information; (2) moderately impaired in interacting with others; (3) mildly impaired in concentrating, persisting, or maintaining pace; and (4) mildly impaired in adapting or managing himself.  *Id.* at 27-28.

The ALJ then found that Kenneth had the residual functional capacity ("RFC")[4] to "perform light work as defined in 20 C.F.R. [§§] 404.1567(b) and 416.967(b) except [that]

> he can lift and carry 20 pounds occasionally and 10 pounds frequently.  He can sit for 6[] hours of an 8-hour workday.  He can stand and/or walk for 6[] hours of an 8-hour workday.  He requires the option for an hourly 5-minute positional change allowance.  He cannot climb ladders, ropes[,] or scaffolds or balanc[e] on wet, uneven, or vibrating surfaces.  He can occasionally climb ramps and stairs and occasionally stoop, kneel, crouch[,] and crawl.  He can have no exposure to working around unprotected heights or heavy moving machinery (e.g., forklift).  Mentally, he can perform simple work tasks involving no public interaction or team/tandem collaborative project-type work with coworkers.  He is able to work around other coworkers with interaction limited to elective superficial conversations.  He can have occasional interaction with supervisors.  He is able to make simple work-related decisions and adapt to simple changes in routine work setting.

*Id.* at 28.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

At step four, the ALJ found that Kenneth had no past relevant work. *Id.* at 33. But given Kenneth's age, education, and RFC, the ALJ found at step five that Kenneth could perform substantial gainful activity as a marker, routing clerk, or mail clerk. *Id.* at 34; *see Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802 (Jan. 1, 2016); *id.* at 222.687-022, 1991 WL 672133 (Jan. 1, 2016); *id.* at 209.687-026, 1991 WL 671813 (Jan. 1, 2016). Therefore, the ALJ found that Kenneth had not been under a disability or entitled to SSI and DIB since his application was filed on October 1, 2021. *See* Docket Item 5 at 35.

## II.   ALLEGATIONS

Kenneth argues that the ALJ erred in three ways. Docket Item 7-1 at 1. First, he argues that the ALJ failed to evaluate migraine headaches at step three. *Id.* at 16. Second, he argues that the ALJ erred in explaining how the limitations associated with migraines were incorporated into the RFC determination. *Id.* at 21. Finally, he argues that the ALJ "failed to connect his highly specific RFC finding that [Kenneth] required an option for an hourly-five-minute positional change allowance to specific evidence to the record." *Id.* at 24. This Court agrees that the ALJ erred and, because that error was to Kenneth's prejudice, remands the matter to the Commissioner.

## III.   ANALYSIS

### A.  KENNETH'S MIGRAINES

Kenneth first argues that "the ALJ failed to discuss [his] migraines anywhere in his step three discussion." Docket Item 7-1 at 17. Along the same lines, he argues that even if the ALJ had conducted an adequate step-three analysis, the ALJ nevertheless

5

erred in "fail[ing] to adequately explain how he incorporated all of the limitations associated with . . . migraines into the RFC finding." *Id*. at 21.

Kenneth is correct that while the ALJ identified migraine headaches as a severe impairment at step two, Docket Item 5 at 25, he did not address that finding at step three, *id.* at 26-28. But that does not necessarily require remand. "Even where the ALJ fails to articulate her reasons at step three, the court is not required to remand if the ALJ's reasons can be discerned from other steps in the ALJ's analysis or from evidence in the record." *Graf v. Berryhill,* 2019 WL 1237105, at *5 (D. Conn. Mar. 18, 2019) (internal citations omitted). And at step four of his analysis, the ALJ noted that he considered Kenneth's migraine headaches "pursuant to SSR 19-4p"—that is, the step-three standard. *See* Docket Item 5 at 30 (citing Docket Item 5-1 at 462-463). So the first question is whether that analysis at step four was sufficient.

20 C.F.R. Part 404, Subpart P, Appendix 1, does not include a specific listing for migraine headaches. "If an impairment is not specified in the listings, the ALJ must compare the medical findings of the claimant's impairment to the criteria of 'closely analogous listed impairments' to determine whether 'the findings related to [the claimant's] impairment[s] are at least of equal medical significance to those of a listed impairment.'" *Amanda B. v. Kijakazi,* 2021 WL 4893379, at *2 (W.D.N.Y. Oct. 20, 2021) (citing 20 C.F.R. § 416.926(b)(2)). SSR 19-4p provides that the "most closely analogous listed impairment" of a primary headache disorder is epilepsy (Listing 11.02). 2019 WL 416935, at *7.

To assess whether a primary headache disorder is equal to the epilepsy criteria in 11.02B, the ALJ should consider several factors, including

> a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

Consistent with that standard, the ALJ summarized some of Kenneth's migraine-related treatment, noting that Kenneth "reported a life-long migraine headache disorder[]," which was "monitored and treated" both by his "primary care provider" and, beginning in "the summer of 2022," by "neurology."  Docket Item 5 at 30.  In July 2022, the ALJ noted, Kenneth told neurologist Maria Vivino, M.D., that he had "daily headache[s] for the last three months but no bedbound days."  *Id*. (citing Docket Item 5-1 at 463).  Kenneth's "treatment plan included adjusting medications and consistent psychiatric care."  *Id*.  The ALJ concluded that "[l]imiting [Kenneth's] anxiety by reducing his work to simple task[s], [and] limiting his social interaction[] and decision making, reduce his potential for triggering a headache and allow for managing his headaches when present."  *Id.* at 31.

So consistent with SSR 19-4p, the ALJ provided a detailed description of Kenneth's headaches, discussed their frequency, and noted the treatment plan.  *Id.* at

7

30.  But the ALJ's analysis still fell short because the ALJ failed to consider "the limitations in functioning that may be associated with the primary headache disorder . . ., such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)."  SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

For example, the medical records that the ALJ explicitly cited in connection with his analysis under SSR 19-4p noted that Kenneth's headaches were associated with "nausea/vomiting[, and] photo/phonophobia" and that he "[w]ould need to sit in a dark and quiet room for [his headache] not to worsen."  Docket Item 5-1 at 463.  They also noted that Kenneth was unable to function when he had a headache and that he might wake up in the morning with a headache or even wake up at night because of one.  *Id*.  But despite all that, the ALJ found that Kenneth's headaches "do not prevent daily activity," and he did not address the limitations that the headaches caused—limitations that SSR 19-4p explicitly directs him to consider.

Moreover, while the RFC accounted for some of the factors that trigger Kenneth's headaches—stress, anxiety, and people—the ALJ did not address the limiting factors associated with Kenneth's headaches.  *Compare* Docket Item 5 at 31 (ALJ limiting Kenneth's "anxiety . . . social interaction, and decision making"), *with* Docket Item 5-1 at 463 (noting headaches associated with light and noise ("photo/phonophobia") as well as weather ("rain").  In other words, while the ALJ's RFC limitations attempt to limit the onset of Kenneth's headaches, they do not address Kenneth's limitations when he does have a headache.  And because the RFC does not account for those "limitations in

8

functioning that may be associated with the primary headache disorder," the ALJ erred. *See* SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019).

In sum, the ALJ erred at step three by not addressing migraine headaches. And while the ALJ purported to do that at step four, this Court still cannot conclude that the step-three error was harmless because the ALJ did not consider the limitations in functioning associated with Kenneth's headaches. *Santiago Ortiz v. Comm'r of Soc. Sec.,* 2020 WL 5792968, at *7 (W.D.N.Y. Sep. 29, 2020) ("In sum, the ALJ's summary discussion of Santiago Ortiz's migraine condition during the remainder of the sequential evaluation does not enable me to conclude that if the ALJ had applied the proper medical equivalency standard, he would have concluded that Santiago Ortiz's migraines were not medically equivalent to Listing 11.02; for this reason, remand is warranted."). This Court therefore remands the matter so that the ALJ can properly consider Kenneth's migraines at step three in accordance with SSR 19-4p. On remand, the ALJ should consider Kenneth's limitations in functioning at step three as well as any impact those limitations may have on the RFC determination.

### B. ALJ'S POSTURAL CHANGE ALLOWANCE

Kenneth also argues that there was "no medical basis" for the ALJ to find that Kenneth would be off task for "a five-minute period every hour." Docket Item 7-1 at 26. More specifically, he argues that "[n]one of the medical opinions of record support the ALJ's highly specific finding that a five minute off-task positional change every hour would adequately accommodate the functional limitations caused by [his] severe impairments of lumbar spine disorder and osteoarthritis of the bilateral knees, let alone allow him to stand or walk for up to six hours per day." *Id.* This Court agrees.

9

An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." SSR 96-8p, 1996 WL 374184, at *7. And when an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence support[s] his RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc. Sec.,* 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018).

If an ALJ includes a "highly[] specific" limitation in the claimant's RFC, that limitation cannot come from whole cloth. *See Tomicki v. Berryhill,* 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018). In other words, the ALJ cannot arrive at specific limitations that do not appear anywhere in the medical record. *See Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir. 1998). Therefore, when the record provides no support for the specific amount of time that a claimant will be off task, a specific finding toward that end is not supported by substantial evidence. *Cf. Tomicki,* 2018 WL 703118, at *5 ("[T]he record does not support the ALJ's conclusion that [the claimant] needs to briefly switch between sitting and standing only every thirty minutes. The ALJ did not cite any evidence to support this highly[] specific sit-stand option . . .. Moreover, there is evidence in the record indicating that [the claimant] needs to change positions every few minutes, not every thirty minutes.").

Here, the ALJ's specific finding that Kenneth "requires the option for an hourly 5-minute positional change," Docket Item 5 at 28, which might mean five minutes off task

10

every hour, *see id*. at 75-78, is not supported by substantial evidence.[5] In fact, "[t]he ALJ did not cite any evidence to support this highly-specific sit-stand option, nor did the Commissioner identify any such evidence in [his] motion papers, making it unclear to the [c]ourt how the ALJ arrived at this particular finding." *Tomicki,* 2018 WL 703118, at *4. As this Court has repeatedly held, that was error.

For example, in *Elder v. Comm'r of Soc. Sec.,* 2019 WL 6320355 (W.D.N.Y. Nov. 26, 2019), this Court remanded because "nothing in the record support[ed] the ALJ's specific RFC determination that Elder would be off task for no more than 'five minutes . . . per hour.'" 2019 WL 632055, at *5. Likewise, in *Tara W. v. Comm'r of Soc. Sec.,* 2021 WL 4316824 (W.D.N.Y. Sep. 23, 2021), this Court remanded when the ALJ found that the "[p]laintiff can be off task 5% of the day" but "failed to explain *where* that specific percentage of 5% came from, or why he assessed that percentage as opposed to one higher or lower . . .." 2021 WL 4316824, at *3 (emphasis in original) (citing *Mariani v. Colvin,* 567 F. App'x 8, 10 (2d Cir. 2014) (summary order)); *see also Wouters v. Comm'r of Soc. Sec.,* 2020 WL 2213896, at *3 (W.D.N.Y. May 7, 2020) (remanding where ALJ did not "point to any evidence in the record suggesting why [the p]laintiff would be off-task for [5% of the] time."); *Annis v. Comm'r of Soc. Sec.,* 2019 WL 6875231, at *10 (W.D.N.Y. Dec. 17, 2019) (finding that ALJ did not have "good

---

[5] At the hearing, the ALJ asked the vocational expert about the five-minute sit/stand option, and the vocational expert indicated that the time would be considered off task. *See* Docket Item 5 at 75-78. The ALJ appeared to accept that judgment, *id.,* the vocational expert's conclusion was based on it, *id*., and the ALJ relied on the vocational expert's conclusion, *see id.* at 34. So while the RFC does not explicitly include time off task, it is clear from the record that the ALJ found a five minute per hour off-task limitation.

11

reasons" to support specific mental RFC determination that plaintiff would be off task for no more than 5% of the workday).

Here, the ALJ did not explain why he chose five minutes per hour as opposed to, say, three minutes or ten. And the failure to tether such a specific finding to the medical records is another reason why remand is required.

In an effort to suggest otherwise, the Commissioner argues that the ALJ "gave [Kenneth] the benefit of the doubt when determining that he 'requires the option for an hourly 5-minute positional change allowance.'" Docket Item 8-1 at 10. More specifically, the Commissioner notes that at the hearing, the ALJ considered Kenneth's testimony that "he 'mainly [sat] in the kitchen at the kitchen table' for the majority of the day"; "'[w]ith regards to . . . [s]itting for five minutes every hour,'" the Commissioner notes that the ALJ said that he "would equate this to be . . . off task, but still under the off-task tolerance level of 10%, which equates to six minutes per hour.'" *Id.* (underline omitted) (citing Docket Item 5 at 46-47, 77). But the ALJ never discussed any of that in his decision, so the Commissioner's post hoc rationalization cannot bridge the evidentiary gap. *Glessing v. Comm'r of Soc. Sec.,* 725 F. App'x 48, 50 (2018) ("[W]e cannot accept the Commissioner's post hoc justification of the ALJ's decision on appeal.").

What is more, the ALJ included several other highly specific limitations in the RFC without tethering them to the medical evidence. For example, the ALJ found that that Kenneth could "lift and carry 20 pounds occasionally and 10 pounds frequently" and that he can "stand and/or walk for 6[] hours of an 8-hour workday." Docket Item 5 at 28. Why twenty pounds instead of fifteen or twenty-five? Why ten pounds frequently

instead of five always or ten occasionally? Why six hours and not five or seven? The ALJ does not say.

And in contrast to cases where the ALJ's specific finding was not error because it was more generous to the claimant than any medical opinion, see, e.g., Lesanti v. Comm'r of Soc. Sec., 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020), medical opinions here found greater limitations. For example, as the ALJ himself noted, Kenneth Chin, M.D., opined that Kenneth would need two or three unscheduled breaks of fifteen minutes each, could stand and walk less than two hours a day, and could lift only five pounds frequently and ten pounds occasionally. See Docket Item 5 at 32 (citing Docket Item 5-1 at 346). And Raquel Benchoam-Ravid, M.D., apparently agreed, finding that Kenneth had marked limitations in prolonged walking, standing, climbing stairs, lifting, carrying, pushing, and pulling. Docket Item 5-1 at 256. So the ALJ erred and the error was not harmless. See Tricic v. Astrue, 2010 WL 3338697, at *3-4 (N.D.N.Y. Aug. 24, 2010) (ALJ's determination that plaintiff could stand/walk and sit for about six hours in an eight-hour workday was not supported by substantial evidence when two treating doctors opined that plaintiff should avoid prolonged sitting and/or standing).

Of course, the ALJ was free to discount Dr. Chin's opinions, as he did. See Docket Item 5 at 31-32. But the ALJ is not a medical professional, so he could not then choose specific limitations—such as ten pounds, or five minutes, or frequently—without grounding them in the medical record. And that error requires remand.[6] See Julie B.-Z.

---

[6] In fact, that error was quite significant here. The vocational expert testified that if Kenneth required two additional unpredicted breaks— Docket Item 5-1 at 346—there would be no work available for him, see Docket Item 5 at 73-75. Likewise, he testified that five minutes per hour off task was just "the off-task tolerance of 10%, which equates to six minutes per hour." Id. at 77. So "[a]t best, . . . the ALJ's conclusion c[ame] from

13

*v. Comm'r of Soc. Sec.,* 2024 WL 1331187, at *4 (W.D.N.Y. Mar. 28, 2024) ("[i]f a physician opines that a claimant will be off task 20% of the time and the ALJ rejects that opinion, the ALJ cannot simply pick a smaller percentage—say, 12% or 7% or 5%—based on the ALJ's own lay judgment"); *Michelle A. v. Saul,* 2020 WL 7223235, at *4 (W.D.N.Y. Dec. 8, 2020) ("[t]he ALJ cites to no evidence in the record, medical or otherwise, suggesting that plaintiff would be off-task for this specific percentage of time"); *Cosnyka v. Colvin,* 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) ("[b]ecause there is no substantial evidence for the ALJ's six-minute per hour formulation, and this formulation was crucial to the vocational expert's conclusion that there were jobs [the plaintiff] could perform, we cannot uphold the ALJ's decision to reject [his] claim for benefits").

In sum, the ALJ erred in formulating specific RFC limitations that find no support in the record, and that error was not harmless. On remand, the ALJ must fashion an RFC that is based on evidence in the record and not on his own surmise. *See Tara W.,* 2021 WL 4316824, at *4.

---

whole cloth" and "[a]t worst, [it] responds to the vocational expert's testimony" that more time off task would mean that Kenneth could not perform the work that the RFC found he could. *See Elder,* 2019 WL 6320355, at *6; *Annis,* 2019 WL 5875231, at *11.

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 8-1, is DENIED, and Kenneth's motion for judgment on the pleadings, Docket Item 7-1, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   December 11, 2024
         Buffalo, New York

*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE